# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO CEASAR SEGURA, JR., | : | Civil No. 1:24-CV-00960 |
| Plaintiff, | : | |
| v. | : | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendants' motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 15.) Julio Ceasar Segura, Jr. ("Plaintiff"), an inmate currently held at the State Correctional Institution Forest ("SCI-Forest"), in Marienville, Pennsylvania, is bringing constitutional claims under 42 U.S.C. § 1983 along with claims under the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"). (Doc. 1.) The court will grant Defendants' motion in part and dismiss all claims against Defendants Harry, Vega, and Ebersole, all First Amendment claims, all RA claims, and all ADA claims without prejudice. The Eighth Amendment and Fourteenth Amendment claims will survive Defendants' motion, and Defendants will be ordered to answer the compliant.

### PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint in June of 2024. (Doc. 1.) The complaint names ten defendants: (1) the Pennsylvania Department of

1

Corrections ("DOC"); (2) Dr. Laurel R. Harry ("Harry"), Secretary of the DOC; (3) Micheal Gourley ("Gourley"), the Superintendent/Facility Manager of SCI-Camp Hill; (4) Albert, Major of Security at SCI-Camp Hill; (5) John Doe 1, Shift Commander/Captain at SCI-Camp Hill; (6) Ferringer, Lieutenant at SCI-Camp Hill; (7) John Doe 2, Sargent at SCI-Camp Hill; (8) Vega, Correctional Officer at SCI-Camp Hill; (9) Ebersole, Correctional Officer at SCI-Camp Hill; and (10) John Doe 3, Correctional Officer at SCI-Camp Hill. (Doc. 1, pp. 3–5.)

In the complaint, Plaintiff alleges that on August 21, 2023, he was housed in the DTU/SL5 Unit designated for inmates who suffer from a severe mental illness or diagnosis. (Doc. 1, pp. 6, 8, 11.) He states that he was serving a 15-day disciplinary sanction for refusing to lock-in. (*Id*., pp. 8, 11.) Plaintiff states that he was housed in a cell with a camera above the door that was dirty with food, spit, grime, blood, feces, and urine stains. (*Id*., p.11.) He alleges that he was denied mental health treatment, stripped of all his property, and placed in a suicide smock. (*Id*.) He states that he began cutting his right leg behind the knee, "which resulted in the CO on constant watch to spray me with OC spray." (*Id*.) Plaintiff states he does not know the name of this correctional officer. (*Id*., pp. 11–12.) Plaintiff states that he believes he was sprayed longer than the three second burst. (*Id*., p. 12.) Plaintiff alleges that there was sufficient time for staff to be called over from other pods and enter his cell and subdue him without further incident. (*Id*.)

Plaintiff alleges that he complied with orders to cuff-up and was escorted by staff to the medical cell for medical assessment and decontamination of the OC spray from his eyes. (*Id.*, pp. 12–13.) Plaintiff complained of OC spray burning his body and Defendants John Doe 1 and Ferringer refused to provide him a shower, soap, clean cell, and new suicide smock. (*Id.*, p. 13.) Plaintiff states that Defendant Ferringer ordered him to be placed back in his cell. (*Id.*) Plaintiff then alleges that he cut his leg again and was sprayed with OC spray a second time. (*Id.*) Plaintiff alleges that the second use of OC spray was excessive. (*Id.*) Plaintiff alleges that this cycle of self-harm, spraying with OC spray, and the denial of a shower, clean cell, and new suicide smock took place a total of eight times. (*Id.*, pp. 13–17.) Plaintiff alleges that Defendants Gourley, Albert, and John Doe 1 were in charge of executing the actual acts and orders to the officers directly for the use of force. (*Id.*, p. 18.)

Plaintiff also alleges that he was released out of the restricted housing unit ("RHU") on August 25, 2023. (*Id.*, p. 23.) Plaintiff states that upon his release, he was given his property without an opportunity to inspect it. (*Id.*, p. 24.) Upon arrival at his cell, he inspected his property and found the legal mail, legal work, and legal documents/research were missing. (*Id.*, pp. 24–25.) Plaintiff states that non-party Correctional Officer Tidwell and Defendant John Doe 2 were the individuals named in the DC-153m form as the officers who "racked my property."

(*Id*., p. 24.)  Plaintiff alleges that the loss of this legal documents resulted in injury because he does not "have a clue on how to file a PCRA and he had a rough version written out and case laws ready to be filed" and now he is housed away from the inmates who was assisting him and he does not have access to the law library." (*Id*., p. 25.)  He asserts that non-party Officer Bennings failed to inventory his property in his presence. (*Id*.)

Based on these alleged facts, Plaintiff raises Eighth Amendment claims including excessive force, cruel and unusual punishment, and deliberate indifference. (*Id*., p. 28.)  He also raises a Fourteenth Amendment due process claim. (*Id*.)  He further raises claims under the ADA and RA. (*Id*.)  While he does not specifically allege a First Amendment claim, the complaint implies a retaliation claim and a denial of access to the court claim.

On June 11, 2025, the court entered an administrative order requiring the payment of the filing fee or an application to proceed *in forma pauperis*. (Doc. 6.) On June 26, 2025, the court received and docketed Plaintiff's motion to proceed *in forma pauperis* and a certified prisoner trust fund account statement. (Docs. 8, 9.) On July 2, 2024, the court entered an order granting Plaintiff's motion to proceed *in forma pauperis*, dismissing all claims against DOC, and serving on the remaining named Defendants. (Doc. 10.) On September 4, 2024, the remaining Defendants filed the instant motion to dismiss the complaint. (Doc. 15.) On

October 7, 2024, Defendants filed their brief in support of the motion. (Doc. 21.) On October 29, 2024, Plaintiff filed a brief in opposition. (Doc. 23.) On January 29, 2025, the court received and docketed a letter from Plaintiff written as a supplement to Plaintiff's brief in opposition. (Doc. 24.) The pending motion to dismiss the complaint is now ripe and will be addressed by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred in SCI-Camp Hill in Cumberland County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

### A. All Claims Against Defendants Harry, Vega, and Ebersole Will Be Dismissed.

Defendants argue that Defendants Harry, Gourley, Albert, Vega, and Ebersole should be dismissed based on a lack of personal involvement. (Doc. 21, pp. 12–15.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United

States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct, and "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fishser*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).

In reviewing the complaint, Plaintiff has failed to allege any action on the part of Defendants Harry, Vega, and Ebersole. (Doc. 1.) Specifically, Plaintiff makes no allegations regarding the actions of Defendant Harry. As to Defendants Vega and Ebersole, he alleges that they provided an explanation as to why they are allowed to use force, not that they used any such force against Plaintiff. (*Id*., p. 17.) Therefore, the court will dismiss claims against Defendants Harry, Vega, and Ebersole without prejudice for a lack of alleged personal involvement.

Turning to Defendants Gourley and Albert, Plaintiff alleges that they are the individuals "who ordered staff these illegal acts and unusual to nature contrary to PA DOC Policies acted deliberately indifferent and knew the safety hazards it could subject Plaintiff to." (*Id*., p. 17.) Defendants allege this is a mere general

8

allegation that is not enough to survive a motion to dismiss because there is no evidence that Defendants Gourley and Albert provided the orders. (Doc. 21, p. 14–15.) However, at this procedural point, the court is not determining what can and cannot be proven, but must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233. Therefore, the claims against Defendants Gourley and Albert will not be dismissed for lack of alleged personal involvement because Plaintiff alleges they were the individuals who ordered staff to take the actions against Plaintiff.

### B. Plaintiff's Retaliation Claims Will Be Dismissed.

Plaintiff's allegations implicate the First Amendment through an implied retaliation claim:

> Plaintiff Segura asserts that Defendant(s) were tired of Plaintiff Segura Grievances and complaint and did not care about him and his mental health or treatment and maliciously and sadistically chose to bi-pass policy and spray him and deny him his request(s) when he was complying and not threatening staff or being assaultive towards staff.

(Doc. 1. p. 18.) However, Plaintiff fails to properly allege a retaliation claim.

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone*, 780

F.3d at 191. A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity. *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on

plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity).

In his complaint, Plaintiff references the existence of grievances and complaints, but he does not identify the grievances or who were the subject of those grievances/complaints. (Doc. 1.) The only grievances specifically identified by Plaintiff are dated after the August 21, 2023 incident. (*Id.*, p. 24.) Additionally, the requests for administrative remedies attached to the complaint are dated after the August 21, 2023 incident. (Docs. 1-6, 1-4, 1-10, 1-11, 1-13.) Therefore, Plaintiff has not properly pleaded causation, and his retaliation claims will be dismissed without prejudice.

### C. Plaintiff's Access to Court Claims Will Be Dismissed.

Plaintiff alleges that his legal documents were missing after being stored in the RHU property room and implies that the loss of documents prevented him from pursuing his PCRA petition. (Doc. 1, pp. 23–26.)

Asserting an actionable claim for denial of access to the courts requires a prisoner to allege that (1) they "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) they have no available remedy for the lost claim other than the present denial of access action. *Rivera v. Monko*, 37 F.4th 909, 915 (3rd Cir. 2022) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3rd Cir. 2008)). Most significant is the nonfrivolous nature of the claim allegedly lost. The

lost claim must be "more than hope" in order to be deemed nonfrivolous. *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Here, Plaintiff alleges that he lost a drafted petition for relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"). (Doc. 25.) He alleges he suffered the following injury:

> [H]e does not have a clue on how to file a PCRA and he had a rough version written out and case laws ready to be filed and now he's in a SL5 unit w[h]ere he is away from individuals who know about criminal procedures and PCRA's who are in general population main law library w[h]ere Plaintiff is unable to get to and won[']t ready in time due to him being in a behavioral management unit.

(Doc. 1, p. 25.) Here, Plaintiff has not alleged that he lost the chance to pursue a non-frivolous claim. He has not alleged the passing of a deadline, but instead asserts that the petition will not be ready in time. Additionally, he provides the court no information concerning the validity of the claims raised in the PCRA petition. Therefore, his access to the courts claim will be dismissed without prejudice.

### D. All Eighth Amendment Claims Will Not Be Dismissed.

Here, Plaintiff raises Eighth Amendment claims under the theory of excessive force, cruel and unusual punishment, and deliberate indifference.

Defendant argues that the use of OC Spray and the Intermediate Restraint System Belt does not rise to the level of excessive force because he was engaging in self-harm and the use of such force was reasonable to stop the self-harm. (Doc.

21, pp. 22–26.)  Specifically, Defendants only addressed the claim of excessive force and did not address the claims of cruel and unusual punishment and deliberate indifference.  (*Id.*)

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7, (1992) (citing *Whitley*, 475 U.S. 312).  Here, Plaintiff alleges that the use of OC spray was excessive and done in a malicious manner.  (Doc. 1, p. 12–18, 27.)

In the current procedural context, the court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233.  Therefore, the court will deny Defendants' motion to dismiss the Eighth Amendment claims on the theory that the use of force was reasonable.  Such a determination is an issue of fact that cannot be determined at this procedural point in the case.

### E. All RA and ADA Claims Will Be Dismissed.

Plaintiff raises claim under both the RA and ADA. (Doc. 1, p. 28.) However, he does not plead the elements of an RA or ADA claim in his complaint.

"To state a claim under either the ADA or the RA, [a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F3.d 285, 288–89 (3d Cir. 2019). A plaintiff "must also show intentional discrimination under a deliberate indifference standard [if] he seeks compensatory damages." *Id.* at 289.

The nature of Plaintiff's RA and ADA claims are not clear from his complaint. To the extent that Plaintiff is alleging that the failure to properly treat his mental health impairments supports a claim under the RA and ADA, such factual allegations cannot be the basis of any such claim. "[D]ecisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, No. 19-cv-859, 2019 WL 1400466, at \*1 n.3 (E.D. Pa. Mar. 27, 2019) (collecting cases). Indeed, such claims would fail because the ADA and RA "prohibit[ ] disability-based discrimination, 'not inadequate treatment for the disability.'" *Kokinda v. Pennsylvania Dep't of Corr.*,

663 F. App'x 156, 159 (3d Cir. 2016)(quotation omitted).  Therefore, Plaintiff's RA and ADA claims will be dismissed without prejudice.

### F.  Plaintiff's Fourteenth Amendment Claim Is Not Addressed.

Defendants did not address Plaintiff's pending Fourteenth Amendment due process claim besides citing the access to courts claim as stemming from the Fourteenth Amendment.  (Doc. 21.)  Therefore, the court will not address the due process claim further.

## CONCLUSION

For the above-stated reasons, the court will grant Defendants' motion to dismiss the complaint in part and deny it in part.  The court will dismiss all claims against Harry, Vega, and Ebersole, all First Amendment Claims, all RA claims, anall ADA claims without prejudice.  The Eighth Amendment and Fourteenth Amendment claims will not be dismissed, and Defendants will be ordered to answer the complaint.

An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: June 9, 2025