**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIO CEASAR SEGURA, JR., | : | Civil No. 1:24-CV-00960 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

Before the court is an amended complaint filed by Julio Ceasar Segura, Jr.

("Plaintiff"), an inmate currently held at the State Correctional Institution Forest

("SCI-Forest"), in Marienville, Pennsylvania, bringing constitutional claims under

42 U.S.C. § 1983.  The court will screen the amended complaint pursuant to 28

U.S.C. § 1915(e)(2)(B) and dismiss the First Amendment claims of retaliation

associated with the August 21, 2023 events and the denial of access to the court.

The court will serve the amended complaint on the newly identified 17 defendants.

**PROCEDURAL HISTORY**

Plaintiff initiated this action by filing a complaint in June of 2024.  (Doc. 1.)

The original complaint names ten defendants: (1) the Pennsylvania Department of

Corrections ("DOC"); (2)  Dr. Laurel R. Harry ("Harry"), Secretary of the DOC;

(3) Micheal Gourley ("Gourley"), the Superintendent/Facility Manager of SCI-

Camp Hill; (4) Albert, Major of Security at SCI-Camp Hill; (5) John Doe 1, Shift

Commander/Captain at SCI-Camp Hill; (6) Ferringer, Lieutenant at SCI-Camp Hill; (7) John Doe 2, Sargent at SCI-Camp Hill; (8) Vega, Correctional Officer at SCI-Camp Hill; (9) Ebersole, Correctional Officer at SCI-Camp Hill; and (10) John Doe 3, Correctional Officer at SCI-Camp Hill.  (Doc. 1, pp. 3–5.)[1]

On June 11, 2024, the court entered an administrative order requiring the payment of the filing fee or an application to proceed *in forma pauperis*.  (Doc. 6.) On June 26, 2024, the court received and docketed Plaintiff's motion to proceed *in forma pauperis* and a certified prisoner trust fund account statement.  (Docs. 8, 9.) On July 2, 2024, the court entered an order granting Plaintiff's motion to proceed *in forma pauperis*, dismissing all claims against DOC, and serving the complaint on the remaining named Defendants.  (Doc. 10.)  On September 4, 2024, the remaining Defendants filed a motion to dismiss the complaint.  (Doc. 15.)  On October 7, 2024, Defendants filed their brief in support of the motion.  (Doc. 21.) On October 29, 2024, Plaintiff filed a brief in opposition.  (Doc. 23.)  On January 29, 2025, the court received and docketed a letter from Plaintiff written as a supplement to Plaintiff's brief in opposition.  (Doc. 24.)

On June 9, 2025, the court entered a memorandum and order granting the motion to dismiss in part.  (Docs. 28, 29.)  The court dismissed all claims against Defendants Harry, Vega, and Ebersole without prejudice for lack of personal

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

involvement.  (Doc. 28, p. 8; Doc. 29.)  The court dismissed all First Amendment claims of retaliation without prejudice because Plaintiff did not identify the grievances at issue or the subjects of the grievances at issue.  (Doc. 28, p. 11; Doc. 29.)  The court dismissed all First Amendment denial of access to the courts claims without prejudice because Plaintiff did not allege that he lost the chance to pursue a non-frivolous claim.  (Doc. 28, p. 12; Doc. 29.)  The court dismissed all RA and ADA claims without prejudice because allegations that a failure to properly treat his mental health impairments does not support such claims.  (Doc. 28, pp. 14–15; Doc. 29.)  Only the Eighth Amendment claims of excessive force, cruel and unusual punishment, and deliberate indifference and Fourteenth Amendment due process claims[2] survived the motion to dismiss.  (Doc. 28; Doc. 29.)

Defendants answered the remaining claims in the complaint on August 18, 2025.  (Doc. 37.)  The court then entered a case management order setting forth a December 31, 2025 deadline to file motions to join additional parties and amend pleadings.  (Doc. 37.)

Just prior to Defendants filing an answer to the complaint in the above-captioned action, Plaintiff initiated a second civil action in this court alleging continued use of force occurring on August 22 and 23, 2023.  *Segura v. Harry, et*

---

[2] Defendants' motion to dismiss did not address the Fourteenth Amendment claims, so the court did not address them.  (Doc. 28, p. 15.)

*al.*, No. 1:25-CV-01384, Doc. 1 (M.D. Pa.).  On August 20, 2025, the court

screened the complaint in that matter and determined that it was substantially

related to the above-captioned action because it addressed the same period of time

and named several of the same Defendants.  The court then dismissed the

complaint with instructions for Plaintiff to raise his additional claims through

amending his complaint in the above-captioned action.  *Id.*, at Doc. 9.

On October 24, 2025, Plaintiff filed a motion amend the complaint and the

proposed amended complaint.  (Docs. 40, 40-1.)  On October 31, 2025, Plaintiff

filed a second motion to appoint counsel.  (Doc. 42.)  Defendants did not respond

to any of these pending motions.  On February 9, 2026, the court granted the

motion to amend the complaint and filed the proposed amended complaint as a

separate document on the docket to serve as the operative complaint.  (Docs. 51,

52.)  The court will now screen the amended complaint.

### STANDARD

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss" an in forma

pauperis case "at any time if the court determines that . . . the action . . . fails to

state a claim upon which relief may be granted[.]"  The legal standard for

dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915 is

identical to the legal standard used when ruling on Fed. R. Civ. P. 12(b)(6) motions

to dismiss. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(6), the court must accept all well pleaded allegations as true and construe all reasonable inferences in favor of the nonmoving party. *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). The pleadings of self-represented plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d. Cir. 2011). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

**DISCUSSION**

**A. Defendants Identified in the Amended Complaint**

The amended complaint is a copy of the original complaint with changes note in blue ink combined with the complaint filed in *Segura*, No. 1:25-CV-01384. (Doc. 52.) In the proposed amended complaint, Plaintiff identifies his John Doe Defendants: (1) Jeffrey Davidson ("Davidson"), Shift Commander/Captain at SCI-Camp Hill as John Doe 1; (2) D. Henderson ("Henderson"), Sargent at SCI-Camp Hill as John Doe 2; and (3) Z. Cokain ("Cokain"), Correctional Officer at SCI-Camp Hill as John Doe 3. (Doc. 40; Doc. 52, p. 4.)

He also adds the following 17 Defendants: (1) Lorah, Captain at SCI-Camphill; (2) Francis, Correctional Officer at SCI-Camp Hill; (3) Jeffrey Elwell ("Elwell"), Lieutenant at SCI-Camp Hill; (4) Dean, Correctional Officer at SCI-Camp Hill; (5) William Rodriguez ("Rodriguez"), Correctional Office at SCI-Camp Hill; (6) Bernard Dugan ("Dugan"), Correctional Officer at SCI-Camp Hill; (7) Samuel Larty ("Larty"), Correctional Officer at SCI-Camp Hill; (8) Edward Lowe ("Lowe"), Correctional Officer at SCI-Camp Hill; (9) Cecelia Umeh Maduka ("Maduke"), a Registered Nurse at SCI-Camp Hill; (10) Monica Effi ("Effi"), Registered Nurse at SCI-Camp Hill; (11) Liza Pokladwski-Diaz ("Pokladwski-Diaz"), Licensed Practical Nurse at SCI-Camp Hill; (12) Michael Huffman ("Huffman"), Correctional Officer at SCI-Camp Hill; (13) Robert

McSherry ("McSherry"), Correctional Officer at SCI-Camp Hill; (14) Ragni, Correctional Officer at SCI-Camp Hill; (15) Bennings, Correctional Officer at SCI-Camp Hill; (16) Negrun, Sargent at SCI-Camp Hill; and (17) Tidwell, Correctional Officer at SCI-Camp Hill.  (Doc. 52, pp. 4–6.)

### B. Plaintiff's Retaliation Claims Associated With The Incident August 21, 2023 Will Be Dismissed.

Plaintiff's original complaint included a First Amendment retaliation claim for the force used on August 21, 2023.  (Doc. 1. p. 18.)  The court concluded that Plaintiff had not properly asserted a retaliation claim because he had not alleged that any named defendants were the subject of any of his grievances or complaints such that their actions could plausibly be in retaliation for his grievances.  (Doc. 28, pp. 9–11.)  Here, Plaintiff's amended complaint does not cure this pleading defect.

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts.  *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015).  A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d

7

Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  The

filing of a lawsuit or a prison grievance constitutes a protected activity under

the First Amendment.  *Fantone*, 780 F.3d at 191.

This court has repeatedly refused to find a causal connection when the

alleged perpetrator of the retaliatory activity was not the subject of the

constitutionally protected activity.  *See Calloway v. Bauman*, No. 2:20-cv-

2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v.

Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F.

App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490,

at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the

moving defendants] would want to retaliate against Plaintiff for filing a

lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576,

579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on

plaintiff's claim that he was retaliated against by a defendant who was not

the target of his protected activity).

In his proposed amended complaint, Plaintiff again references the

existence of grievances and complaints in relation to the events of August

21, 2023, but he does not identify the subject of those

grievances/complaints.  (Doc. 52, pp. 10–12.)  Upon review, the grievances

attached to the amended complaint are dated after the August 21, 2023

incident.  (Docs. 52-1, 52-2.)  The only attached document that predates the

August 21, 2023 events is an August 14, 2023 hearing action in which

Plaintiff pleaded guilty to two misconduct charges and names Defendant

Albert as one of the Program Review Committee Members.  (Doc. 52-1, pp.

1–2.)  However, this is not a grievance and is not sufficient to establish that

Plaintiff was engaged in constitutionally protected activity as it does not

allege anything about or against Defendant Albert.

At the February 9, 2026 status conference, Plaintiff referenced

paragraph 93 of his amended complaint and stated that he had filed

grievances sufficient to establish a retaliation claim.[3]  Paragraph 93

discusses losing his legal mail and legal materials and the resulting injury

being his inability to prepare his petition under the Post Convictional Relief

Act ("PCRA").  (Doc. 52, p. 28.)  Plaintiff is accurate that he filed a

grievance concerning the alleged conduct surrounding the loss of legal mail

and materials, but he did not file a grievance prior to the missing property

---

[3] Plaintiff also addressed the claims set forth in paragraph 109 at his February 9, 2026 status conference.  Paragraph 109 concerns a conversation between Plaintiff and Defendant Elwell on August 22, 2023.  (Doc. 52, p. 35.)  The court is only addressing the retaliation claims associated with the August 21, 2023 actions and the loss of legal property (i.e. those retaliation claims previously dismissed by the court) in this memorandum.  Therefore, the court will not consider any retaliation claim in connections with paragraph 109 at this time.  However, nothing in the court's decision to refrain from addressing any of the alleged retaliation associated with the August 22, 2023 and August 23, 2023 events at this time should be construed as a finding on the merits of the claims.

that named any defendants who he associates with the missing property.
(Doc. 52-1, pp. 20.)  The causation element requires Plaintiff to establish
that he took some constitutionally protected action against defendants that
then resulted in retaliation by those defendants.  Without alleging protected
conduct that *pre-dates* the loss of property involving those he alleges to have
taken his property, Plaintiff cannot establish a retaliation claim, and such
claims will be dismissed.

Considering that the court provided Plaintiff the opportunity to amend
his pleading, and he has not cured the pleading defect, any opportunity to
further amend the complaint is futile and this dismissal will be with
prejudice.  *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d
850, 861 (3d Cir. 2014) (Self-represented litigants are to be granted leave to
file a curative amended complaint even when a plaintiff does not seek leave
to amend, unless such an amendment would be inequitable or futile.)

## C. Plaintiff's Access to Court Claims Will Be Dismissed.

In the original complaint, Plaintiff alleged that his legal documents were
missing after being stored in the RHU property room and implies that the loss of
documents prevented him from pursuing his PCRA petition.  (Doc. 1, pp. 23–26.)
The court dismissed this claim without prejudice because he did not properly
allege that he had lost a chance to pursue a nonfrivolous claim.  (Doc. 28, pp. 11-

12.)  The court finds that Plaintiff did not cure this pleading defect in the proposed amended complaint.

Asserting an actionable claim for denial of access to the courts requires a prisoner to allege that (1) they "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) they have no available remedy for the lost claim other than the present denial of access action.  *Rivera v. Monko*, 37 F.4th 909, 915 (3rd Cir. 2022) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3rd Cir. 2008)).  Most significant is the nonfrivolous nature of the claim allegedly lost.  The lost claim must be "more than hope" in order to be deemed nonfrivolous.  *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Here, Plaintiff alleges that he was sent to the RHU on August 8, 2023 and his property was "racked" by Defendants Tidwell and Negrun.  (Doc. 52, pp. 26–27.)  He alleges that upon his release, Defendant Bennings did not give him an opportunity to inspect and sign over his property.  (*Id*.)  When he returned to his cell, his draft PCRA petition was missing.  (*Id*.)

Plaintiff alleges that the need to redo his PRCA petition resulted in him not sending it to the state court until February 15, 2025.  (*Id*., p. 29.)  He states that he received a cash slip demonstrating that he sent the PCRA petition out on that date, and this should serve as his filing date under the mail box rule.  (*Id*.)  He states that the deadline was February 26, 2025.  (*Id*.)  He alleges that the state court received

the PCRA petition on March 3, 2025 and ruled it untimely. (*Id*.) He alleges that had he not been forced to redo the petition, he would not have been filing it so close to the deadline, and it would not have been dismissed as untimely. (*Id*.)

He cites to a motion for additional time to amend his PCRA petition to establish that his PCRA petition was nonfrivolous. (*Id*.) However, a review of the documents attached to the complaint demonstrates that his attorney also states that regardless of the timeliness of the petition, the attorney filed a letter of no merit in the action stating that "your claims lack arguable merit and/or you were not prejudiced." (Doc. 52-1, pp. 25–26; Doc. 52-2.) The state court did not deny the PCRA petition only because it was untimely, but also based on the no merit letter filed by Plaintiff's counsel. (Doc. 52-2.)

Based on the facts set forth in the proposed amended complaint and the attached documents, the court finds that Plaintiff has failed to allege that the loss of his property in August of 2023 resulted in his PCRA petition being dismissed as untimely in February and March of 2025. First, the deadline is nearly two years after the draft PCRA petition went missing. Second, the alleged conduct that resulted in Plaintiff's inability to prove that he mailed the petition prior to the February 26, 2025 deadline was the confiscation of a cash slip at a different property and not the loss of the draft petition in August of 2023. Third, the court finds that based on the documents attached to the proposed amended complaint, he

cannot prove that his petition was nonfrivolous. Therefore, the First Amendment denial of access to court claims will be dismissed with prejudice.[4]

## CONCLUSION

For the above-stated reasons, the court will dismiss the First Amendment retaliation claims associated with the events of Augst 21, 2023 and the denial of access to court claim with prejudice. The court will serve the three newly identified John Doe defendants and 14 of the newly named defendants.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: February 13, 2026

---

[4] There are no further claims against Defendants Tidwell, Bennings, and Negrun as they are not named elsewhere in the amended complaint. (Doc. 52.) Therefore, these three individuals need not be served.