# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO CEASAR SEGURA, JR., | : | Civil No. 1:24-CV-00960 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Defendants' motion to dismiss the amended complaint. (Doc. 61.)  For the following reasons, the court will grant the motion in part and deny the motion in part.  The court will dismiss claims against Defendants Harry, Lorah, Dean, and Ragni, the remaining retaliation claims, and the Eighth Amendment claims against Defendants Effie and Donnison.  The court will not dismiss the remaining claims against Defendants Francis and Cline.

### PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint in June of 2024.  (Doc. 1.) The original complaint names ten defendants: (1) the Pennsylvania Department of Corrections ("DOC"); (2)  Dr. Laurel R. Harry ("Harry"), Secretary of the DOC; (3) Micheal Gourley ("Gourley"), the Superintendent/Facility Manager of SCI-Camp Hill; (4) Albert, Major of Security at SCI-Camp Hill; (5) John Doe 1, Shift Commander/Captain at SCI-Camp Hill; (6) Ferringer, Lieutenant at SCI-Camp

1

Hill; (7) John Doe 2, Sargent at SCI-Camp Hill; (8) Vega, Correctional Officer at SCI-Camp Hill; (9) Ebersole, Correctional Officer at SCI-Camp Hill; and (10) John Doe 3, Correctional Officer at SCI-Camp Hill.  (Doc. 1, pp. 3–5.)[1]

On June 11, 2024, the court entered an administrative order requiring the payment of the filing fee or an application to proceed *in forma pauperis*.  (Doc. 6.) On June 26, 2024, the court received and docketed Plaintiff's motion to proceed *in forma pauperis* and a certified prisoner trust fund account statement.  (Docs. 8, 9.) On July 2, 2024, the court entered an order granting Plaintiff's motion to proceed *in forma pauperis*, dismissing all claims against the DOC, and serving the complaint on the remaining named Defendants.  (Doc. 10.)  On September 4, 2024, the remaining Defendants filed a motion to dismiss the complaint.  (Doc. 15.)  On October 7, 2024, Defendants filed their brief in support of the motion.  (Doc. 21.) On October 29, 2024, Plaintiff filed a brief in opposition.  (Doc. 23.)  On January 29, 2025, the court received and docketed a letter from Plaintiff written as a supplement to Plaintiff's brief in opposition.  (Doc. 24.)

On June 9, 2025, the court entered a memorandum and order granting the motion to dismiss in part.  (Docs. 28, 29.)  The court dismissed all claims against Defendants Harry, Vega, and Ebersole without prejudice for lack of personal involvement.  (Doc. 28, p. 8; Doc. 29.)  The court dismissed all First Amendment

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

2

claims of retaliation without prejudice because Plaintiff did not identify the grievances at issue or the subjects of the grievances at issue. (Doc. 28, p. 11; Doc. 29.) The court dismissed all First Amendment denial of access to the courts claims without prejudice because Plaintiff did not allege that he lost the chance to pursue a non-frivolous claim. (Doc. 28, p. 12; Doc. 29.) The court dismissed all claims under the Rehabilitation Act and the Americans with Disabilities Act without prejudice because allegations that a failure to properly treat his mental health impairments do not support such claims. (Doc. 28, pp. 14–15; Doc. 29.) Only the Eighth Amendment claims of excessive force, cruel and unusual punishment, and deliberate indifference and Fourteenth Amendment due process claims[2] survived the motion to dismiss. (Doc. 28; Doc. 29.)

Defendants answered the remaining claims in the complaint on August 18, 2025. (Doc. 37.) The court then entered a case management order setting forth a December 31, 2025 deadline to file motions to join additional parties and amend pleadings. (Doc. 37.)

Just prior to Defendants filing an answer to the complaint in the above-captioned action, Plaintiff initiated a second civil action in this court alleging continued use of force occurring on August 22 and 23, 2023. *Segura v. Harry, et*

---

[2] Defendants' motion to dismiss did not address the Fourteenth Amendment claims, so the court did not address them. (Doc. 28, p. 15.)

3

*al.*, No. 1:25-CV-01384, Doc. 1 (M.D. Pa.). On August 20, 2025, the court screened the complaint in that matter and determined that it was substantially related to the above-captioned action because it addressed the same period of time and named several of the same Defendants. The court then dismissed the complaint with instructions for Plaintiff to raise his additional claims through amending his complaint in the above-captioned action. *Id.*, at Doc. 9.

On October 24, 2025, Plaintiff filed a motion to amend the complaint and the proposed amended complaint. (Docs. 40, 40-1.) On October 31, 2025, Plaintiff filed a second motion to appoint counsel. (Doc. 42.) Defendants did not respond to either of these pending motions. On February 9, 2026, the court granted the motion to amend the complaint and filed the proposed amended complaint as a separate document on the docket to serve as the operative complaint. (Docs. 51, 52.) On February 13, 2026, the court screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and dismissed the retaliation claims associated with the alleged events of August 21, 2023 and all denial of access to courts claims. (Docs. 53, 54.) The court ordered service on the new Defendants named in the amended complaint. (Doc. 54.)

On April 10, 2026, Defendants file the instant motion to dismiss the amended complaint and a brief in support. (Docs. 61, 62.) Plaintiff filed a brief in

4

opposition and a declaration.  (Docs. 67, 68.)  The court will now address the pending motion.

## STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

Under Rule 12(b)(6), the court must accept all well pleaded allegations as true and construe all reasonable inferences in favor of the nonmoving party.  *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).  The pleadings of self-represented plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d. Cir. 2011).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## DISCUSSION

### A. Summary of the Amended Complaint

The amended complaint is a copy of the original complaint with changes in blue ink combined with the complaint filed in *Segura*, No. 1:25-CV-01384.  (Doc. 52.)  In the amended complaint, Plaintiff identified his John Doe Defendants: (1) Jeffrey Davidson ("Davidson"), Shift Commander/Captain at SCI-Camp Hill as John Doe 1; (2) D. Henderson ("Henderson"), Sargent at SCI-Camp Hill as John Doe 2; and (3) Z. Cokain ("Cokain"), Correctional Officer at SCI-Camp Hill as John Doe 3.  (Doc. 40; Doc. 52, p. 4.)

He also added the following 17 Defendants: (1) Lorah, Captain at SCI-Camp Hill; (2) Francis, Correctional Officer at SCI-Camp Hill; (3) Jeffrey Elwell ("Elwell"), Lieutenant at SCI-Camp Hill; (4) Dean, Correctional Officer at SCI-Camp Hill; (5) William Rodriguez ("Rodriguez"), Correctional Office at SCI-Camp Hill; (6) Bernard Dugan ("Dugan"), Correctional Officer at SCI-Camp Hill; (7) Samuel Larty ("Larty"), Correctional Officer at SCI-Camp Hill; (8) Edward Lowe ("Lowe"), Correctional Officer at SCI-Camp Hill; (9) Cecelia Umeh Maduke ("Maduke"), Registered Nurse at SCI-Camp Hill; (10) Monica Effi ("Effi"), Registered Nurse at SCI-Camp Hill; (11) Liza Pokladwski-Diaz ("Pokladwski-Diaz"), Licensed Practical Nurse at SCI-Camp Hill; (12) Michael Huffman ("Huffman"), Correctional Officer at SCI-Camp Hill; (13) Robert

McSherry ("McSherry"), Correctional Officer at SCI-Camp Hill; (14) Ragni, Correctional Officer at SCI-Camp Hill; (15) Bennings, Correctional Officer at SCI-Camp Hill; (16) Negrun, Sargent at SCI-Camp Hill; and (17) Tidwell, Correctional Officer at SCI-Camp Hill. (Doc. 52, pp. 4–6.)

In the amended complaint, Plaintiff alleges that on August 21, 2023, he was housed in the DTU/SL5 Unit designated for inmates who suffer from a severe mental illness or diagnosis. (*Id.*, pp. 10, 13.) He states that he was serving a 15-day disciplinary sanction for refusing to lock-in. (*Id.*) Plaintiff states that he was housed in a cell with a camera above the door and the cell was dirty with food, spit, grime, blood, feces, and urine stains. (*Id.*, p.13.) He alleges that he was denied mental health treatment, stripped of all his property, and placed in a suicide smock. (*Id.*) He states that he began cutting his right leg behind the knee, "which resulted in the CO on constant watch [Defendant Vega] to spray me with OC spray." (*Id.*, pp. 13–14.) Plaintiff states that he believes he was sprayed longer than the three second burst. (*Id.*, p. 14.) Plaintiff alleges that there was sufficient time for staff to be called over from other pods and enter his cell and subdue him without further incident. (*Id.*) Plaintiff alleges that he complied with orders to cuff-up and was escorted by staff to the medical cell for medical assessment and decontamination of the OC spray from his eyes. (*Id.*, pp. 14–15.) Plaintiff complained of OC spray burning his body and Defendants Davidson and Ferringer refused to provide him a

7

shower, soap, clean cell, and new suicide smock. (*Id.*, p. 15.) Plaintiff states that Defendant Ferringer ordered him to be placed back in his cell. (*Id.*) Plaintiff then alleges that he cut his leg again and was sprayed with OC spray a second time. (*Id.*) Plaintiff alleges that the second use of OC spray was excessive. (*Id.*) Plaintiff alleges that this cycle of self-harm, spraying with OC spray, and the denial of a shower, clean cell, and new suicide smock took place a total of eight times. (*Id.*, pp. 15–19.) Plaintiff alleges that Defendants Gourley, Albert, and Davidson were in charge of executing the actual acts and orders to the officers directly for the use of force. (*Id.*, p. 20.)

Plaintiff alleges that the next day, August 22, 2023, Plaintiff was placed in an intermediate restraint system, which consisted of a Velcro nylon belt and shackles, and had a suicide watch officer outside the cell door. (*Id.*, pp. 31–33.) He alleges that he was allowed a suicide smock, but no mattress, no toilet, no shoes, and no blanket based on the events of the prior day. (*Id.*, p. 33.) Plaintiff states that he was in the same suicide smock from the day before and suffered breathing complications due to the excessive exposure to OC spray. (*Id.*) Likewise, Plaintiff alleges that he continued to get OC spray in his eyes due to the spray from the day before not being properly cleaned off of him. (*Id.*) Plaintiff alleges that Defendant Elwell came onto his block and told the officer there to "spray his ass if he does anything." (*Id.*, p. 34.) Plaintiff states that Defendant

8

Elwell then stated to him, "I hope [you] act out I got the golden ticket to do whatever I want to you." (*Id.*) Plaintiff alleges that he and Defendant Elwell engaged in verbal a back and forth when Plaintiff began to scratch his wounds causing them to bleed. (*Id.*) At this point, Defendant Elwell called for Defendants McSherry, Johnson, McSherry, and Lowe and yelled at Plaintiff "you['re] going [to] pay for putting a PREA on my staff." (*Id.*, p. 35.) Defendant Elwell then grabbed the MK-9 spray bottle and emptied the bottle into Plaintiff's cell. (*Id.*) Plaintiff alleges that this resulted in further breathing complications for Plaintiff. (*Id.*, pp. 35–36.) Plaintiff states that Defendant Elwell called Defendants Francis and ordered staff to assemble in a line in front of his cell including Defendants McSherry, Huffman, Lowe, Elwell, and Johnson. (*Id.*, at 36.) Plaintiff alleges that he made requests to leave the cell peacefully and was denied by Defendant Lowe who expressed a desire to use the riot shield on Plaintiff. (*Id.*, pp. 36–37.) Plaintiff states that he walked to the back of his cell to demonstrate that he was peaceful and Defendant Lowe entered the cell and struck him with the riot shield while making comments about Plaintiff's history of filing complaints. (*Id.*, p. 38.) Plaintiff alleges that he hit the back wall of the cell and he felt Defendants Lowe, Johnson, McSherry, and Huffman punching, kneeing, smacking, and dragging him. (*Id.*) They then lifted Plaintiff and escorted him to E-Block without medical assessment and was placed on a restraint chair while Defendants Johnson, Lowe, Elwell,

9

McSherry, and Huffman laughed at him stating "That'll teach him to not complain anymore and we not messing around." (*Id.*)

Plaintiff alleges that Defendant Effi took his blood pressure, pulse, and oxygen and offered to decontaminate his eyes while he was in the restraint chair. (*Id.*, p. 40.) Plaintiff alleges that he complained of breathing issues, chest pain, pain from the OC spray, and pain from being knocked out briefly. (*Id.*) Plaintiff alleges that Defendant Nurses Effi and Donnison[3] stated that he could not properly be treated while in the restraint chair, and Defendant Elwell refused to remove him from the chair. (*Id.*, p. 40.) Plaintiff alleges that he was denied a shower or other means to decontaminate the OC spray off his body leaving him in pain, distress, and risk of serious infection based on the wound on his right leg. (*Id.*, p. 42.)

Plaintiff alleges that Defendant Francis failed to supervise his employees at SCI-Camp Hill allowing his employees to deviate from DOC policy. (*Id.*, pp. 42–43.) Plaintiff alleges that Defendant Gourley's use of force policies and his lack of supervision violate his Eighth Amendment rights. (*Id.*, p. 43.) Plaintiff alleges that Defendant Elwell stated to him that Defendant Gourley told him to spray Plaintiff with OC spray, to skip policy, to open the door and to use force. (*Id.*, p. 44.) Plaintiff alleges that he spoke with Defendant Gourley a day or two after the August 22, 2023 events, expressing nothing had been cleaned following the OC

---

[3] Donnison is not identified as a party elsewhere in the compliant. (Doc. 52.)

Spray and Defendant Gourley did nothing to remedy the situation. (*Id.*, pp. 44–45.)

Plaintiff also alleges that on August 22, 2023, during the 2-10 shift, he requested psych and a shower, which was denied and ignored by Defendant Henderson who was on watch. (*Id.*, p. 47.) Plaintiff states that he began to cut himself again and Defendant Rodriguez used OC Spray. (*Id.*) Defendants Ferringer, Henderson, Dugan, Cline, Larty, and Ebersole assembled in front his cell. (*Id.*) Plaintiff alleges that he told Defendant Dugan that he wanted to come out peacefully, but Defendant Ferringer stated they were going in. (*Id.*) Plaintiff stated that he complied when told to sit on his bed, and Defendant Henderson sprayed an excessive amount of OC spray. (*Id.*) Plaintiff states that Defendants Cline, Ebersole, and Larty entered the cell and punched, kneed, and slammed him around. (*Id.*, p. 48.) Plaintiff states he was then escorted to the triage room to be assessed by medical. (*Id.*) Plaintiff then requested a shower, clean cell, clean suicide smock, and wound care, and Defendant Ferringer denied the request. (*Id.*) When he asked the same of the medical staff, Defendant Pokladowski stated it was up to the Secretary and denied his requests for care. (*Id.*)

Plaintiff alleges that his restraints were changed and, in the process, his smock was removed. (*Id.*) He states that he again requested a new smock, and was denied. (*Id.*, p. 49.) He then refused to put on the smock covered in OC

spray, Defendant Ferringer refused a new smock, and Defendant Henderson began to tase him in the back, legs, and buttocks. (*Id.*) Plaintiff states that he was prone on the exam bed in the triage cell when Defendants Larty and Cline also used force on Plaintiff. (*Id.*) Plaintiff was then provided a clean smock. (*Id.*) Plaintiff requested a clean cell and shower, but this was denied by Defendant Ferringer and he was placed back in the same OC sprayed cell. (*Id.*)

Based on these alleged facts, Plaintiff raises First Amendment retaliation claims. (*Id.*, pp. 45, 54.) Plaintiff raises claims against Defendants Harry and Gourley based on his failure to provide safe, humane, fair, and adequate policy. (*Id.*, p. 51.) He raises Eighth Amendment claims of excessive force and failure to treat. (*Id.*, pp. 51–55.) He also raises claims of infliction of emotional distress and a failure to protect Plaintiff from self-harm. (*Id.*, p. 55.)

On February 13, 2026, the court screened the amended complaint and dismissed all retaliation claims associated with the alleged events of August 21, 2023 and the denial of access to courts claim with prejudice. (Docs. 53, 54.) The court served Defendants the amended complaint. (Doc. 54.)

On April 10, 2026, Defendants filed a motion to dismiss the amended complaint seeking a partial dismissal. (Doc. 61.) Plaintiff filed a brief in opposition. (Doc. 67.) The court will now address the pending motion to dismiss.

**B. The Motion to Dismiss for Lack of Personal Involvement Will Be Granted as to Defendants Harry, Lorah, Dean, and Ragni and Denied as to Defendants Francis and Cline.**

Defendants Harry, Francis, Lorah, Dean, Cline, and Ragni have moved for dismissal based on lack of personal involvement.  (Doc. 62.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

### 1.  Defendant Harry

Plaintiff raises Eighth Amendment claims against Defendant Harry premised on his liability as a supervisor: "Dr. Laurel R. Harry fail[ed] to provide the Pa DOC employees safe, humane, fair, and adequate policy to follow that is not violating Plaintiff 8th Amendment Rights."  (Doc. 52, p. 51.)

If a plaintiff seeks to hold a supervisory official liable for unconstitutional acts by their subordinates, the plaintiff's allegations must satisfy one of two

13

theories of supervisory liability: (1) "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory, a plaintiff must "identify the specific supervisory practice or procedure that the supervisor failed to employ." *See Chavarriaga v. New Jersy Dept. of Corrections*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). The plaintiff must also show that:

> [(1)] the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, [(2)] the supervisor was aware that this unreasonable risk existed, [(3)] the supervisor was indifferent to the risk[,] and [(4)] the underling's

14

> violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*See id*. (quoting *Brown*, 269 F.3d at 216).  Plaintiff's amended complaint lacks the specific supervisory practice or procedure that Defendant Harry allegedly failed to employ.  (Doc. 52, p. 51.)  Instead, he provides general allegations that Defendant Harry failed to provide staff with safe, humane, fair, and adequate policy to follow that does not violate his Eighth Amendment rights and that he wrote a letter complaining of staff conduct.  (*Id*.)  He then provides the following list of alleged wrongs:

> a) given adequate mental health treatment which; b) means Plaintiff has a right to be protected from self harming self and; c) be free from prison official subjecting Plaintiff to physical brutality; d) proper staff training and supervision and; e) failing to intervene and correct policy and hold the Pa DOC employees accountable for wrong  doing; f) harsh condition of confinement for mentally ill individuals in SL5 DTU, RHU, BMU, SRTU and all area of prison.

(*Id*.)

For the second theory of supervisory liability, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this

15

to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'"  (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").  Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive*." See Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995) and *Rode v. Dellarciprete*, 845 F.2d 1195, 1201 n.6 (3d Cir. 1988)).

Here, Plaintiff alleges that he wrote a letter to Defendant Harry complaining about staff conduct.  (Doc. 52, p. 51.)  But there is no allegation that this letter was contemporaneous to or prior to the alleged misconduct of his subordinates to establish actual knowledge.  Therefore, the amended complaint does not meet the requirements to establish supervisory liability under either theory, and the claims against Defendant Harry will be dismissed.

### 2. Defendant Francis

Similarly, Plaintiff premises Defendant Francis' liability on his supervisory role.  (Doc. 52, p. 51.)  Defendants argue that Plaintiff failed to allege and identify

16

with particularity that Francis was personally involved in any conduct or in a pattern of conduct that would demonstrate deliberate indifference.  (Doc. 62, p. 11.)  Specifically, Defendants cite to Plaintiff's allegation that Defendant Francis failed to supervise his employees at SCI-Camp Hill, allowing his employees to deviate from Pa DOC existing policies, guidelines, requirements, rules, procedures, regulations, laws, and statutes set in place for staff to following prior, during, and after unplanned and planned use of force.  (Doc. 52, p. 42.)  However, Plaintiff also alleges that Defendant Francis "approved Defendant Lt. Elwell to use force on Plaintiff while in the IRS belt and shackles."  (Doc. 52, p. 51.)  This second allegation specifically alleges that Defendant Francis had contemporaneous knowledge of the use of force and approved the action.  Therefore, the motion to dismiss will be denied as to claims against Defendant Francis and the claims will not be dismissed.

### 3.  Defendants Lorah, Dean, Cline,  and Ragni

Defendants allege that Plaintiff only named Defendants Lorah, Dean, Cline, and Ragni in the caption of the amended complaint with no allegations of their personal involvement in the text of the amended complaint.  (Doc. 62, p. 12.)

However, the amended complaint alleges that Defendant Cline entered Plaintiff's cell, punched, kneed, and slammed Plaintiff. (Doc. 52, p. 47.)  The amended complaint also states that Defendant Cline used force against him while

17

he was in the triage cell.  (*Id.*, p. 49.)  Therefore, the court will deny the motion to dismiss as to the claims raised against Defendant Cline.

Otherwise, Defendants are correct that Plaintiff only named Defendants Lorah, Dean, and Ragni in the caption of the pleading.  Therefore, Plaintiff has not established personal involvement and all claims against them will be dismissed.

## C. The Motion to Dismiss Plaintiff's Remaining Retaliation Claim Will Be Granted.

Defendants Elwell, Lowe, McSherry, Johnson, and Hoffman move for dismissal of Plaintiff's retaliation claim.  (Doc. 62.)  Defendants allege that Plaintiff has referenced the existence of grievances and complaints in the amended complaint, but he has not identified the grievances or who were the subject of those grievances or complaints. (*Id.*, p. 13.)

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts.  *Fantone v. Latini*, 780 F.3d 184, 191 (3d. Cir. 2015).  A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523,

18

530 (3d Cir. 2003).  The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment.  *Fantone*, 780 F.3d at 191.

This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity.  *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity).

In the amended complaint, Plaintiff does not address the specifics of the grievances or complaints he references and does not identify the staff members who were the subjects of those grievances or complaints.  (Doc. 52.)  Instead, he alleges that Defendant Elwell called on Defendants McSharry, Johnson, Hoffman, and Lowe and stated "you['re] going to pay for putting a PREA on my staff."  (*Id*., p. 35.)  Plaintiff does not allege who was the subject of this PREA complaint.  Therefore, Plaintiff has not alleged sufficient facts to establish a causal connection

19

necessary for a retaliation claim.  Likewise, the court reviewed the documents attached to the amended complaint and they do not contain grievances or complaints that predate the August 21, 2023 or August 22, 2023 events.  (Docs. 52-1, 52-2.)  Therefore, the court will dismiss the remaining retaliation claims.

### D. The Motion to Dismiss Plaintiff's Eighth Amendment Claim Will Be Granted.

Defendants Effie and Donnison move to dismiss Plaintiff's Eighth Amendment inadequate medical treatment claim.  (Doc. 62.)  First, the court notes that Donnison was never identified as a defendant prior to the filing of the amended complaint, was not identified in the caption of the amended complaint, and has not been served a copy of the amended complaint.  (Doc. 52.)  Despite this, the court will dismiss the Eighth Amendment claims raised against both Defendants Effie and Donnison.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious

20

that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In the amended complaint, Plaintiff alleges that Defendant Effi took his blood pressure, pulse, and oxygen and offered to decontaminate his eyes while he was in the restraint chair. (Doc. 52, p. 40.) Plaintiff alleges that he complained of breathing issues, chest pain, pain from the OC spray, and pain from being knocked out briefly. (*Id.*) Plaintiff alleges that Nurses Effi and Donnison stated that he could not properly be treated while in the restraint chair, and Defendant Elwell refused to remove him from the chair. Nothing in these alleged facts supports deliberate indifference to a serious medical need by Effi and Donnison. They sought to provide treatment to Plaintiff, but were allegedly prevented by Defendant Elwell. As such, the court will dismiss the Eighth Amendment claim brought against them.

## CONCLUSION

For the above-stated reasons, the court will grant Defendants' motion to dismiss in part and deny the motion in part. All claims against Defendants Harry, Lorah, Dean, and Ragni will be dismissed. All remaining retaliation claims will be

21

dismissed.  The Eighth Amendment claims against Defendant Effie and Nurse Donnison will be dismissed.  Considering that the court provided Plaintiff the opportunity to amend his pleading, and he has not cured the pleading defects, any opportunity to further amend the complaint is futile and this dismissal will be with prejudice.  *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014) (Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.)

Claims against Defendants Francis and Cline will not be dismissed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 22, 2026